IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| Jinrun Gao, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  10-CV-1025 |
| ) | |
| Snyder Companies[1], and ) | |
| Brickyard Apartments by Snyder, LLC, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

Plaintiff, proceeding *pro se*, pursues claims under the Fair Housing Act.  Defendants move to dismiss on grounds of *res judicata*.  For the reasons below, the Court recommends that the motion be denied with leave to renew.

**Allegations in Amended Complaint (d/e 19)**

These allegations are taken from the amended complaint (d/e 19).  They are liberally construed and set forth as true for purposes of this order only.  EEOC v. Concentra Health Serv., Inc., 496 F.3d 773, 776-77 (7th Cir.

---

[1]Defendants assert that the Snyder Companies is not a legal entity, and that the correct defendant is Brickyard Apartments by Snyder, LLC.  (d/e 13, para. 17).

2007)(factual allegations taken as true on Rule 12(b)(6) motion to dismiss); Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)(pro se pleadings liberally construed).

Plaintiff and his wife, who are both of American-Chinese and Chinese origin, leased an apartment in Defendant's apartment complex for a little over one year, from January 25, 2007, to February 29, 2008. (d/e 19, ¶ 6). On or about January 18, 2008, second hand cigarette smoke began seeping in from the adjoining apartment, which was occupied by Caucasian tenants. The smoke allegedly rendered Plaintiff's apartment uninhabitable and caused Plaintiff's wife to develop asthma and respiratory problems, "substantially limit[ing] her ability to breathe causing a dramatic decline in her health." Id. ¶ 8. Doctors advised Plaintiff's wife to move out of the apartment immediately. Id.

Plaintiff and his wife repeatedly complained to Defendants about the smoke and asked for reasonable accommodations, such as repairing the walls, providing air filtration, or designating the building as non-smoking. Defendants denied these requests and also ignored emergency calls for inspection. Id. ¶ 9. On February 2, 2008, Plaintiff and his wife visited the rental office, again complaining of the smoke and requesting

accommodation. The assistant manager (a Caucasian) denied the request, remarking, "Why do you Chinese people have so many problems?"

Id. ¶ 10. This did not deter Plaintiff, who continued to assert his rights, which in turn enraged the assistant manager. The assistant manager ordered Plaintiff to leave, and, as Plaintiff was leaving, another employee (Leo) warned Plaintiff that he would be arrested if he said another word. Plaintiff asked Leo if he was a police officer or had an arrest warrant, to which the Leo replied, "Believe me, I will arrest you." Id. "The Plaintiff then called 911 in fear that Defendants and their employees may commit such crime as kidnapping. A police officer was dispatched by the 911 center to protect the Plaintiff and his wife." Id.

Two days later, Defendants sent a letter to Plaintiff and his wife, informing them that their lease would not be renewed in July, due to the incident. Plaintiff and his family were also barred from the rental office and clubhouse. They were therefore unable to use the exercise machines, pick up mail packages or pay rent like the other tenants. Id. ¶ 11. Additionally, on February 26, 2008, Defendants refused Plaintiff's request for unspecified maintenance.

As a result of Defendants' failure to remedy the situation or offer reasonable accommodation, Plaintiff's wife had to live in hotels for an unspecified period of time. On January 29, 2010, Plaintiff filed this case, pursuing claims under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA").

## Discussion

Plaintiff pursues FHA claims based on Defendants' alleged discrimination based on race and national origin and Defendants' refusal to make reasonable accommodations for Plaintiff's wife. Plaintiff also pursues a claim for retaliation for exercising his FHA rights. (d/e 19, ¶ 13).

### I. Stephen Snyder

Defendants' motion asks to dismiss Stephen Snyder, who was named as a defendant in the original Complaint. (d/e 1). Stephen Snyder has since been terminated because Plaintiff filed an Amended Complaint dropping Stephen Snyder as a defendant. (Amended Complaint, d/e 19; d/e 18, ¶ B). The motion to dismiss is therefore moot with regard to Stephen Snyder.

## II. Illinois Human Rights Commission Order

Defendants attach an order from the Illinois Human Rights Commission dated January 1, 2009, which affirms dismissal of state law discrimination charges filed by Plaintiff and his wife based on many of the same facts as alleged in this case.  (d/e 12-1, Ex. A).[2]  In the administrative proceeding, Plaintiff and his wife alleged race discrimination in violation of 775 ILCS 5/3-102(B), and failure to reasonably accommodate Plaintiff's wife's asthma, in violation of 775 ILCS 5/3-102.1(C)(2).

The Department dismissed the charges on August 28, 2008, for lack of substantial evidence, and the Commission's Order affirms that dismissal. Specifically, the Order finds that Plaintiff and his wife were banned from the apartment clubhouse/office not because of their race, but because of the

---

[2]Matters outside the pleading cannot be considered unless the motion is treated as one for summary judgment, and the parties are given "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); Doss v. Clearwater Title Co., 551 F.3d 634, 639 (7th Cir. 2008).  However, there is "a narrow exception to the Rule 12(d) instructions that permits a district court to take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment."  Doss, 551 F.3d at 640; U.S. v. City of Rock Island, Ill., 182 F.Supp.2d 690, 695 (C.D. Ill. 2001).  Judicial notice of the Commission's Order is warranted, since it is a report of an administrative body. See Radaszewski v. Maram, 383 F.3d 599, 600 (7th Cir. 2004)(taking judicial notice of administrative findings in public record);  Menominee Indian Tribe of Wis. v. Thompson, 161 F.3d 449, 456 (7th Cir.1998)("Judicial notice of historical documents, documents contained in the public record, and reports of administrative bodies is proper.").

"altercation" that had occurred on February 2, 2008. As the Order characterizes it,

> . . . [O]n February 2, 2008, the Complainants entered the Respondent's office and demanded allowance to terminate their lease because of Complainant Rong's asthma. The Respondent stated that they could either buy the remaining time on their lease or sublease their apartment. After the Complainants declined both options, the Department's investigation showed that an altercation ensued, creating a disturbance on the Respondent's property, which resulted in one of the two parties calling the police.

(d/e 12-1, ¶ 4). The Commission concluded that the Respondent had demonstrated "a legitimate, non-discriminatory reason for its actions. Further, the Complainants failed to prove that this proffered reason was mere pretext for discrimination." (d/e 12-1, ¶ 10).

As for the respiratory difficulties of Plaintiff's wife, the Commission concluded that the "undisputed facts in the investigation file demonstrate that the Respondent took steps to investigate the Complainants' concerns and complaints about smoke . . ." but had been unable confirm the reports. The Order found that, even though the reports of cigarette smoke could not be confirmed, Plaintiff and his wife were nevertheless "granted . . . [their] request for early termination of their lease, without penalty, once [Respondent] received medical documentation of the need for the

accommodation[,]" which occurred on February 11, 2008, about three and ½ weeks after Plaintiff first noticed the second hand smoke. (d/e 12-1, ¶¶ 6, 17). The Commission concluded that "there is no substantial evidence to support the Complainants' claim that the Respondent failed to reasonably accommodate Complainant Rong's physical disability, asthma." (d/e 12-1, ¶ 15).

Plaintiff assails the Order, claiming that the Commission threw away his evidence in support of the existence of second hand smoke, and manipulated evidence to make it appear that Plaintiff had created similar disturbances as white tenants who had also been barred from the office/clubhouse. Plaintiff denies creating any disturbance. (d/e 15, ¶ 3(B)).

### III.  *Res Judicata* /Collateral Estoppel

Defendants argue that the Commission's findings of fact are preclusive and that the Commission's Order is *res judicata* as to these FHA claims.

Technically, Defendants should have filed the motion as one for judgment on the pleadings under Fed. R. Civ. P. 12(c), after filing an Answer asserting *res judicata* is an affirmative defense. Carr v. Tillery,

591 F.3d 909, 913 (7th Cir. 2010)(district court "jumped the gun" in dismissing case under 12(b)(6) on *res judicata* grounds, but error was harmless, because record already contained all information necessary to rule on the defense).; Forty One News, Inc. v. County of Lake, 491 F.3d 662, 664 (7th Cir. 2007).[3] It makes no practical difference here, though, because in the Court's opinion, there are too many questions unanswered to make a definitive ruling on the *res judicata* defense.

*Res judicata* (claim preclusion) "prohibits a party from relitigating issues that could have been raised in an earlier action . . . (citations omitted), in contrast to collateral estoppel [issue preclusion], which bars the resurrection of issues that were actually litigated and decided." Doe v. Allied-Signal, Inc., 985 F.2d 908, 913 (7th Cir. 1993).  Issue preclusion seems the relevant focus here, since there is no indication that Plaintiff could have brought an FHA claim before the Illinois Department of Human Rights.  *See* 775 ILCS 5/1-103(D); Allahar v. Zahora, 59 F.3d 693, 696 (7th Cir. 1995)("Agency decisions may have a preclusive effect, but only in the limited area of factfinding.")(*citing* Elliot, 478 U.S. at 799).

---

[3] The same legal standard applies under Rule 12(c) and 12(b)(6). Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009).

If Plaintiff had filed a petition for judicial review of the Commission's Order in state court, and the state court had ruled on the merits of that petition, preclusion would apply in the Court's opinion. See Torres v. Rebarchak, 814 F.2d 1219 (7th Cir. 1987)(state court's dismissal of equitable claims with prejudice pursuant to settlement agreement barred subsequent equitable claims under FHA and civil rights statutes); Turner v. Crawford Square Apartments III, 449 F.3d 542 (3rd Cir. 2006)(*res judicata* barred FHA claim where it could have been asserted as defense in state court eviction action); *Housing Discrimination Law and Litigation* § 31:15 ("Preclusion: Res Judicata and Collateral Estoppel").

Here, though, there is no indication that any state court reviewed the Commission's Order, which makes the *res judicata* analysis more complicated. See University of Tennessee v. Elliot, 478 U.S. 788, 794 (1986)(28 U.S.C. § 1738 (full faith and credit) does not apply to unreviewed state administrative findings). Defendants cite the Supreme Court case of Elliot, which held that a state administrative law judge's unreviewed finding that a plaintiff's termination had not been racially motivated barred a subsequent 42 U.S.C. § 1983 action. 478 U.S. at 797-99. But that same case also held that preclusion did *not* bar a subsequent Title VII claim,

because of the language and legislative history of Title VII. 478 U.S. at 795-96; *see also* Buckhalter v. Pepsi-Cola General Bottlers, Inc., 820 F.2d 892, 894-95 (7th Cir. 1987)( IHRC determination was not *res judicata* for Title VII claim, but was *res judicata* for civil rights claim).

Defendants do not address how Elliot's analysis of Title VII claims affects the *res judicata* analysis of FHA claims; nor do Defendants discuss the language and legislative history of the FHA. The Court's own nonexhaustive research has found some non-binding cases that do support Defendants' position, but not enough to confidently give a recommendation without additional briefing. *See* Ward v. Harte, 794 F.Supp. 109 (S.D.N.Y. 1992)(FHA claims precluded by unreviewed administrative proceedings; party had full and fair opportunity to litigate, was represented by counsel, testified and cross-examined tenant in administrative proceedings) (offensive collateral estoppel); Sokoya v. 4343 Clarendon Condo Assoc., 1996 WL 699634 (N.D. Ill. 1996)(unpublished)(claim preclusion did not apply to FHA claim with regard to unreviewed agency determination, but issue preclusion did apply because agency proceedings complied with Elliot's requirements); *but see also Housing Discrimination Law and Litigation* § 31:15, "Preclusion: Res Judicata and Collateral Estoppel"

(Westlaw cite: HDISLL § 31.15, p. 3)("The clear implication of *Elliot* for fair housing purposes is that claims based on the 1866 Civil Rights Act would be subject to the preclusive effect of an unreviewed agency decision, but that Fair Housing Act claims may be more problematic.").

Additionally, a more detailed factual record is necessary to make the determination. For administrative findings to have preclusive effect under Elliott, the state agency must have "'act[ed] in a judicial capacity . . .[and] resolve[d] disputed issues of fact properly before it which the parties have had an opportunity to litigate.'" Elliot, 478 U.S. at 798, *quoting* U.S. v. Utah Const. & Min. Co., 384 U.S. 394, 422 (1966). Only then will federal courts "give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." Id. Defendants offer no information about the administrative proceedings other than the Commission's Order, and therefore the Court cannot determine the extent of Plaintiff's opportunities to litigate his issues at the administrative level. *Compare with* Sokoya, 1996 WL 699634 *6 (safeguards include party's opportunity for counsel, pretrial discovery, opportunity to file memoranda, examine and cross-examine witnesses, introduce exhibits, object to evidence); Ward, 794 F.Supp. at 116 (agency's procedures must be substantially similar to

procedures in court); *see also* Elliot, 478 U.S. at n. 2 (administrative hearing was extensive, involving more than 100 witnesses, 150 exhibits, and 5,000 transcript pages); Reed v. Amax Coal Co., 971 F.2d 1295, 1300 (7th Cir. 1992)(recounting safeguards required in administrative proceedings for Elliot's issue preclusion to apply). [4]

Finally, even if the Commission's factual findings are preclusive, what about the issues that the Commission expressly declined to address? The Commission specifically declined to address the allegations that Defendants ignored maintenance requests and refused requests for accommodation for a smoke-free building, improving the ventilation and repairing the walls. (d/e 12-1, p. 2, n. 1). Defendants do not address this issue either.

*Res judicata* is an affirmative defense which Defendants have the burden of pleading and proving. Allahar v. Zahora, 59 F.3d 693, 696 (7th Cir. 1995). For the reasons set forth above, the Court does not believe Defendants have met this burden yet. Accordingly, the Court will recommend that the motion be denied with leave to renew as a Rule 12(c)

---

[4]Defendants cite Allahar, 59 F.3d 693 (7th Cir. 1995) and 775 ILCS 5/10-102(3) & (4) for the proposition that Plaintiff cannot pursue a civil action if the merits have already been ruled on in an administrative hearing. A state statute, however, could not determine when and whether a plaintiff can file a federal claim in federal court.

motion, or, if matters outside the pleading will be offered, as a motion for summary judgment.

WHEREFORE, the Court RECOMMENDS that Defendant's Motion to Dismiss (d/e 12) be denied as moot with regard to Stephen Snyder, and denied with leave to renew with regard to the *res judicata* argument.

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to timely object will constitute a waiver of objections on appeal. Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986). See also Local Rule 72.2.

ENTER:    July 13, 2010

*s/ Byron G. Cudmore*

_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE